UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NICOLE LEE DUNSETH**, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 03-CV-02123 (RBW) |
| **ELI LILLY AND COMPANY**, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Currently before the Court is Defendant Eli Lilly and Company's Motion for Summary Judgment [D.E.# 13] ("Def.'s Mot."). The defendant argues in its motion that this Court should grant summary judgment in its favor because the plaintiff, Nicole Lee Dunseth, has not and cannot produce evidence to identify Eli Lilly and Company ("Eli Lilly") as the manufacturer of the drug that allegedly caused her harm. Def.'s Mot. at 1. For the reasons set forth below, the defendants' motion will be denied.

**I. Background**

The plaintiff initially filed a five-count complaint in the Superior Court of the District of Columbia and the case was subsequently removed to this Court on October 17, 2003. See Notice of Removal. The plaintiff alleges that she suffered injuries as a result of "embryonic exposure" to DES. Compl.¶ 4. According to the plaintiff, her mother was prescribed and took DES while pregnant with the plaintiff in 1969. Id. ¶ 3. The Plaintiff alleges that the DES her mother ingested, the same DES which allegedly caused her injuries, was manufactured by the defendant. Id. ¶¶ 3-5. The defendant argues that the plaintiff has failed to prove that it was the defendant's

product that caused her harm.  Defendant Eli Lilly and Company's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment ("Def.'s Mem.") at 1.  The defendant asserts that the plaintiff has provided no medical or pharmacy records indicating that the defendant produced the DES in question here.  Id.  The defendant also contends that at least sixty other manufacturers produced the same drug that allegedly caused the plaintiff's injuries.  Id.  The defendant argues that the description provided by the plaintiff's mother of a small, white pill with a cross score on it fails to distinguish a DES pill made by the defendant from other DES products whose physical appearance fits the same description.  Id.  The defendant further argues that even if one of the defendant's products, in some dosage, matches the description given by the plaintiff's mother, it would be impermissible to allow a jury to find for the plaintiff.  Id. at 2.  Thus, the defendant contends that the plaintiff's claims fail as a matter of law if she cannot identify the brand of DES her mother ingested while pregnant to the exclusion of other DES products on the market at that time.  Id.

## II.  Summary Judgment Standard

This Court may grant a motion for summary judgment under Rule 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ."  Id. at 255.  The entry of summary judgment is appropriate after there has been an

"adequate time for discovery . . . [and the] party [against whom the motion has been filed] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Summary judgment, however, "is a drastic remedy, [and therefore] courts should grant it with caution so that no person will be deprived of his or her day in court to prove a disputed material factual issue." Greenberg v. Food & Drug Admin., 803 F.2d 1213, 1216 (D.C. Cir. 1986). Summary judgment is, accordingly, not appropriate where "the evidence presented on a dispositive issue is subject to conflicting interpretations, or reasonable persons might differ as to its significance . . . ." Id. (citations omitted). Moreover, when reviewing the evidence, the Court must draw "all inferences . . . in favor of the nonmoving party[.]" Coward v. ADT Sec. Sys., Inc., 194 F.3d 155, 158 (D.C. Cir. 1999); Aka v. Wash. Hosp. Ctr, 156 F.3d 1284, 1295 (D.C. Cir. 1998). The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. And, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "any factual assertions in the movant's affidavits will be accepted . . . as being true unless [the opposing party] submits [her] own affidavits or other documentary evidence contradicting the assertion." Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir.1992) (quoting Lewis v. Faulkner, 689 F.2d 100, 102 (7th Cir. 1982)).

The mere existence of a factual dispute by itself, however, is not enough to bar summary

judgment.  Rather, the party opposing the motion must show that there is a genuine issue of material fact.  See Anderson, 477 U.S. at 247-48.  To be material, the fact must be capable of affecting the outcome of the litigation; to be genuine, the issue must be supported by admissible evidence sufficient for a reasonable trier of fact to find in favor of the nonmoving party.  Id.; see also Laningham v. United States Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

### III.  Analysis

#### A.  Choice of Law

As an initial matter, the defendant contends that the "substantive law of Illinois governs [the] plaintiff's claims." Def.'s Mem. at 5.  The plaintiff does not appear to necessarily contest the application of Illinois law, stating that she "does not dispute that under Illinois, Nevada, and District of Columbia law, [the plaintiff] must identify the DES maker in question." Plaintiff Nicole Lee Dunseth's Memorandum of Points and Authorities in Support of her Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n") at 12.  However, because the plaintiff indicates that the laws of Nevada and District of Columbia may also apply, the Court must assess which state's laws applies in this case.  In resolving this question, the Court must perform a "governmental interests" analysis.  Herbert v. District of Columbia, 808 A.2d 776, 779 (D.C. 2002).  As part of this analysis, the Court will consider the four factors set forth in the Restatement (Second) of Conflict of Laws (1971) § 145, Comment d, as has the District of Columbia Court of Appeals.  These factors are: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c)) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship is centered.  Herbert, 808 A.2d at 779 (citations omitted).

As to the first factor – the place where the injury allegedly occurred – the plaintiff's mother was prescribed, bought, and ingested the DES that allegedly caused the plaintiff's injuries while living in Illinois. The plaintiff was also born in Illinois. There is no evidence that the plaintiff's mother lived in the District of Columbia while she was taking DES, nor is there any evidence that the plaintiff's mother, or the plaintiff, ever lived in the District of Columbia. Consequently, any injury suffered by the plaintiff did not occur in the District of Columbia. An analysis of this factor does not favor applying District of Columbia law, and therefore, because the injury occurred in Illinois, the first factor favors applying the law of Illinois.

The second Restatement factor – the place where the conduct causing the injury allegedly occurred – also does not favor applying District of Columbia law. The plaintiff alleges that "the [d]efendant met with and conspired with numerous pharmaceutical manufactures in the District of Columbia, prior to obtaining governmental approval for DES." Compl. ¶ 2. Additionally, the plaintiff contends that the "[d]efendant spearheaded industry-wide conferences in the District of Columbia to seek approval of DES by Joint Submission, withholding from the Food and Drug Administration ("FDA") reports questioning the efficacy of DES and studies raising serious questions of safety." Id. The plaintiff asserts that these meetings, conferences, and agreements occurred in the District of Columbia. Id. The defendant admits that it has sold and distributed its product in the District of Columbia and that the FDA, which is located in the District of Columbia, approved the sale of the product. See Answer ¶ 2. And, while the defendant has admitted that it sold DES in the District of Columbia, it notes that there is no evidence that the DES bought or ingested by the plaintiff's mother ever passed though the District of Columbia. Def.'s Mem. at 5. As such, although the defendant has some affiliation with the District of

Columbia, this second factor nonetheless does not favor applying District of Columbia law because the place where the location of the conduct that purportedly caused the injury is Illinois. Accordingly, the second Restatement factor also favors the application of Illinois law.

The third factor for the Court to consider under the Restatement is the domicile, residence, nationality, place of incorporation and place of business of the parties. The plaintiff is currently domiciled in Nevada, see Notice of Removal ¶ 2 and the defendant is incorporated in Indiana with its principle place of business in Indianapolis, Indiana. Id. Because neither party is domiciled in, resides in, is incorporated in, or has a principle place of business in the District of Columbia, this third factor also does not favor applying District of Columbia law. Neither does this factor support the application of Illinois law. However, residency and place of business are not dispositive in this choice of laws analysis because they are the only factors that do not favor applying Illinois law, while the other factors of the government interests analysis do. See Herbert, 808 A.2d 780. Moreover, "when the policy of one state would be advanced by application of its law, and that of another state would not be advanced by application of its law, a false conflict appears and the law of the interested state prevails." Id. at 779 (citation omitted). Thus, this Court concludes that because the injury allegedly occurred in Illinois, the conduct causing the injury allegedly occurred in Illinois, and, as discussed immediately below, the relationship of the parties was clearly centered in Illinois, the state of Illinois has the strongest policy interest in this matter.

The fourth Restatement factor also favors applying Illinois law because the relationship between the parties was clearly centered in Illinois. In Lakie v. Smithkline Beecham, 965 F. Supp. 49, 59 (D.D.C. 1997), also a products liability case, a former member of this Court found

that Virginia law applied there because the plaintiff purchased and used the product in question in Virginia. The court noted that "a state's interest in the application of its law is strongest when both the place of the injury and the domicile of the plaintiff are within its territory." Id. (citations omitted). While the plaintiff here is currently domiciled in Nevada, Illinois is the state where the plaintiff's mother was prescribed, bought, and ingested the DES that allegedly caused the plaintiff's injuries. Compl. ¶ 3. These facts, as well as the fact that the plaintiff was born in Illinois, id., weigh heavily in the Court's decision here. Moreover, as noted already, the plaintiff does not appear to contest the application of Illinois law. Pl.'s Opp'n at 12. Consequently, based on the four Restatement factors, the Court concludes that Illinois law is the law that should govern the resolution of this matter.

    **B. Is there a Genuine Issue of Material Fact as to Whether the Plaintiff can Identify Defendant as the Manufacturer of the DES that Allegedly Caused Her Injury?**

The defendant's summary judgment motion raises the question of whether, under Illinois law, the plaintiff can sufficiently identify the defendant's DES as the product that caused her injuries. Under Illinois law, a plaintiff has the burden of proving "that the defendant produced, manufactured, sold, or was in some way responsible for the product." Meshes v. Warren & Sweat Mfg. Co., No. 98 C 50064, 2001 WL 1002410 at *3 (N.D. Ill. 2001) (quoting Smith v. Eli Lilly & Co., 560 N.E.2d 324, 328 (Ill. 1990) (citations omitted)). To prevail under the theories of either strict liability or negligence, "the plaintiff must establish some causal relationship between the defendant and the injury-producing agent." Smith, 560 N.E.2d at 328. Proof of this causal relationship "may come in the form of direct or circumstantial evidence, but mere speculation, guess, or conjecture is not enough." Meshes, 2001 WL 1002410 at *3 (citing Smith, 560 N.E.2d

at 328; Sutton v. Wash. Rubber Parts & Supply Co., 530 N.E.2d 1055, 1097 (1988)).  "[W]here circumstantial evidence is relied upon, the circumstances must justify an inference of probability as distinguished from mere possibility."  Zimmer v. Celotex Corp., 549 N.E.2d 881, 883 (Ill. App. Ct. 1989).

  The Court finds that the description of the DES pills ingested by the plaintiff's mother, coupled with the affidavit of Eugene L. Belczak, create "an inference of probability" that the DES in question here was manufactured by the defendant.  Id.  The plaintiff's mother testified during her deposition that the Diethylstilbestrol (a type of DES) she ingested was "a small white pill that had a cross on it, not very big, no writing on it or anything like that.  It just had a, it was marked with a cross."  Pl.'s Opp'n, Appendix ("App.") 2 (June 7, 2004 Deposition of Diana Barrett ("Barrett Dep.")) at 19-20.  The plaintiff's mother further testified that she was able to remember these details "because it was a very significant time in my life.  I mean, I was afraid of having a miscarriage.  So when I was taking that pill every day, it just is embedded in my mind.  It was important, I was in the process of possibly losing my child. . . ."  Id. at 61.  While this description alone would not suffice to identify the defendant's product, the plaintiff also submitted the sworn statement of Eugene L. Belczak, a pharmacist from the Chicago area.  Mr. Belczak is a 1957 graduate of the University of Illinois School of Pharmacy.  Pl.'s Opp'n, App. 6 (Statement of Eugene L. Belczak ("Belczak Stmt.")) ¶¶ 1-2.  Beginning in 1954 when he was an intern, Mr. Belczak worked continuously for forty years as a retail pharmacist in the Chicago area.  Id.  Mr. Belczak's statement attests that he is familiar not only with the general pharmacy practices in the Chicago area, but specifically with "those pharmaceuticals commonly used for the care and treatment of pregnant women in the mid-to-late 1960's in the greater Chicago area."

Id. ¶ 5-6.  Mr. Belczak unequivocally states that "[i]f a DES mother described a white, cross-scored tablet without any other markings or writing on it . . . , it had to be a Lilly product as no other brand of DES fitting that description was available in Southwest Chicago in 1969."  Id. at ¶ 9.  Given Mr. Belczak's statement and the plaintiff's mother's testimony, the Court finds that there is a genuine issue of material fact as to whether the plaintiff's mother ingested the defendant's DES.  This finding precludes the Court from entering summary judgment for the defendant.  See Anderson, 477 U.S. at 248.

   Summary judgment is not appropriate where evidence "is subject to conflicting interpretations, or reasonable persons might differ as to its significance."  Greenberg, 803 F.2d at 1216.  Assuming the plaintiff's mother and Mr. Belczak will be called as witnesses at trial, it will be for the jury, as the trier of fact, to evaluate their credibility and the credibility of their statements.  Id.  The statements made by the plaintiff's mother and Mr. Belczak have shown there is more than simply some "metaphysical doubt as to the material facts."  See Matsushita Elec. Co., 475 U.S. at 586.  Here, the description of the DES given by the plaintiff's mother, when considered with the sworn statement of Mr. Belczak, create a genuine issue of material fact.  This factual issue – whether or not the plaintiff has identified the defendant as the manufacturer of the DES in question – is material because it is capable of affecting the outcome of the litigation.  See Anderson; 477 U.S. at 247-48; Laningham, 813 F.2d at 1242-43.  The Court also finds that this factual dispute is genuine because it is supported by admissible evidence – the likely testimony of Mr. Belczak and the plaintiff's mother.  See id.  Accordingly, this Court cannot conclude from the evidence before it, that a reasonable juror could not find that the DES ingested by the plaintiff's mother was, in fact, manufactured by the defendant.

## IV. Conclusion

The only issue before the Court at this time is whether the plaintiff has met her burden to sufficiently identify the defendant's product as the product used by her mother, that summary judgment would be inappropriate.  Given the statement of Mr. Belczak and the plaintiff's mother's testimony, the Court finds that there is a genuine issue of material fact which precludes the Court from entering summary judgment for the defendant.  Accordingly, the defendant's motion for summary judgment is denied.

**SO ORDERED** on this 16th day of September, 2005.[1]

REGGIE B. WALTON
United States District Judge

---

[1] An Order consistent with this Memorandum Opinion is being issues contemporaneously herewith.